E. BRYAN WILSON
Acting United States Attorney

JACK S. SCHMIDT
Assistant United States Attorney
Federal Building and U.S. Courthouse
709 West 9th Street, Room 937
Post Office Box 21627
Juneau, Alaska 99802
Phone: (907) 796-0400
Fax: (907) 796-0409
E-mail: jack.schmidt@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) No. 1:19-cr-00009-TMB-MMS |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
| RODERICK LEE C. AYERS III., | ) |
| Defendant. | ) |

**UNITED STATES SENTENCING MEMORANDUM**

<u>**SUMMARY OF SENTENCING RECOMMENDATIONS**</u>

**TERM OF IMPRISONMENT** .......................................................................... 96 months

**SUPERVISED RELEASE** ................................................................................. 5 years

**SPECIAL ASSESSMENT** ................................................................................ $100.00

The United States Probation Office (USPO) has prepared a presentence investigation report (PSR) in this case. The United States agrees with the factual and legal findings of the USPO.

I. **BACKGROUND**

A. **Investigation and Arrest**[1]

On December 21, 2017, a U.S. Postal Inspector identified a suspicious parcel addressed from Conner Ayers in Washington to the defendant, RODERICK LEE C. AYERS III to a P.O. Box address located in Auke Bay, Alaska. The parcel contained 123.5 grams of heroin.

On February 5, 2018, Juneau Police Department received a tip that AYERS had sent a pallet of tires. A shipping company representative informed law enforcement that an individual, who was known to law enforcement as a drug addict, inquired about the pallet of tires before it had been offloaded from the barge. The representative also identified the named individual whom AYERS had addressed the tires to, was also known as a drug addict and the paramour of the person inquiring about the tires.

On February 6, 2018, Juneau Police arrived at the barge company and saw a cardboard box contained within the tires. A drug detection K-9 alerted to scent of a controlled substance. A search warrant was subsequently obtained, which revealed 326.2 grams of actual methamphetamine located inside the box within the pallet of tires. A

---

[1] The facts set forth herein are a summary of facts previously provided in the defendant's plea agreement, PSR, and police reports.

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS 2

Case 1:19-cr-00009-TMB-MMS Document 45 Filed 06/24/21 Page 2 of 11

short time later, the individual who earlier inquired about the pallet of tires came into the shipping company and was speaking with an employee when police attempted to contact the individual. The individual fled the scene and discarded 102 grams of heroin in a garbage can in the bathroom and a search of the individual's vehicle a loaded Kimber .45 pistol, an MK22 rifle, and a Glock Pistol and drug paraphernalia.

On February 7, 2018, two confidential informants (CIs) met with law enforcement and admitted they worked for AYERS and had purchased drugs from AYERS in the past where the CIs sent female couriers to Seattle mule drugs back to Juneau. The CIs paid for the drugs in various ways, such as using drug mules to transport money, sending pre-paid debit cards, depositing money into AYERS bank account.

On February 18, 2018, a CI exchanged multiple texts with AYERS and sent $1,800 via Western Union to purchase one ounce of heroin. On February 22, 2018 a package sent by AYERS was intercepted at the Juneau Post Office, which contained 24.18 grams of heroin.

## II. GUIDELINE APPLICATIONS

### A. Offense Level

#### 1. Base level offense

The USPO, based on the total amount of narcotics seized, found the defendant to be a base level 32. The United States agrees with the above calculation by the USPO.

//

//

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS                3

Case 1:19-cr-00009-TMB-MMS   Document 45   Filed 06/24/21   Page 3 of 11

## 2. Criminal history category

The USPO has calculated the defendant's criminal history to be category III. The government agrees with this calculation.

## B. Acceptance of Responsibility

U.S.S.G. § 3E1.1 allows for up to a three-point decrease to the defendant's criminal offense level for acceptance of responsibility. The defendant pled guilty and agreed to the facts which constitute the essential elements in the single count Indictment. Therefore, the government recommends the three-point decrease for the defendant's criminal offense level for acceptance of responsibility.

## C. Total Offense Level

With a three-point reduction for acceptance of responsibility, AYERS' adjusted total offense level on the drug charge is 29 with a criminal history category III, thus, his guideline range is 108 to 135 months.

## III. WITNESSES

The government does not intend to call any witnesses.

## IV. APPLICATION OF 18 U.S.C. § 3553(a)

The crime itself and the history of the defendant are facts the Court must consider when fashioning an appropriate sentence for the defendant. An application of the factors set forth in 18 U.S.C. § 3553(a) supports the imposition of the parties agreed upon sentence of 96 months of incarceration.

//

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS                         4

Case 1:19-cr-00009-TMB-MMS   Document 45   Filed 06/24/21   Page 4 of 11

### A. The nature and circumstances of the offense.

The defendant distributed methamphetamine and heroin from at least December 21, 2017 to February 22, 2018, however, given the information given by the CIs it was likely much longer. The defendant attempted to distribute nearly ¾ pound of pure methamphetamine and nearly 1/3 of a pound of heroin into Juneau, which has been ravaged by effects of drugs throughout the city and its residents. The court is well aware of the direct damage to the community by this type of behavior in this small Southeast community. This offense's effect on those who are addicts and end up before the court facing loss of their liberty and the serious medical effects as a result of that drug use that occur to those using those drugs. However, there is a direct effect to other citizens in the community, because these offenses increase local property crimes that drug addicts commit to feed their addictions, which the court has seen first-hand in its court (see *United States v. Drury*, 1:17-cr-00006-TMB). There is clearly a direct correlation to the commission of drug trafficking offenses and a potential violent outcome against an innocent citizen. Most citizens have no skin in the game of drug trafficking. Drug trafficking clearly has far reaching effects on the community beyond that of the local drug dealer and user.

Then defendant is responsible for nearly 3/4 of a pound of pure methamphetamine and nearly 1/3 pound of heroin. At the current market of .2 for methamphetamine and .1 for heroin, there is approximately 1,631 and 1,478 dosage units, respectively. That is nearly enough drugs to supply nearly 1/3 of the student population of Juneau School

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS                 5

District, which is approximately 4,600, with methamphetamine and heroin. The effect of this offense cannot be understated.

B. The history and characteristics of the defendant.

The defendant has a history of substance abuse, starting at the age of 12 to 20 years old he used marijuana, at the age of 17 to 22 used alcohol to excess, and at 17 started using methamphetamine at least five times per day and has used methamphetamine five times a day until April 7, 2019, when he started to use heroin daily from the age of 21 until April 7, 2019. It appears that AYERS has a significant drug problem; however, according to what the defendant has reported he ceased all drug use on April 7, 2019, when he was arrested on a Washington State charge. AYERS' use of drugs does not excuse his behavior, as he was willing to assist in the distribution of a highly addictive and destructive drug in Southeast community of Juneau that has suffered at the hands of drug trafficking for years. The fact that he is a drug addict, is a condition that will follow him for the rest of his life and treatment for his drug use is appropriate for defendant, as well as, mental health treatment, so he does not fall back into criminal behavior after his eventual release from prison. The defendant's drug trafficking activities were not solely fueled by his addiction, however, the financial rewards associated with it. The defendant was trafficking large amounts of methamphetamine and other drugs. It is clear, drugs in the Lower 48 are cheaper and the prices in Alaska are exponentially higher in Alaska than anywhere else in the Lower 48. The financial aspect of the offense cannot be overlooked.

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS                    6

Case 1:19-cr-00009-TMB-MMS   Document 45   Filed 06/24/21   Page 6 of 11

The defendant would benefit from a 500-hour residential treatment program and any sentence the court gives the defendant must require this as part of his sentence if there is any chance of AYERS completing supervised release successfully.

**C.      The seriousness of the offense.**

This was a very serious offense, AYERS distributed methamphetamine and heroin in a small Southeast community that has had suffered the huge influx of methamphetamine and heroin and its damaging effects on the community. Illicit narcotics are a cancer and many Southeast communities have suffered at the hands of this epidemic for years. The effect on the communities such as Juneau has been devastating. The death from overdoses, to the creation of new addicts, and the violent and property crimes they commit to support their newfound drug addictions puts the community of Juneau at significant risk. This is not a victimless crime. The community as a whole suffers.

Between 2008 and 2010, the Alaska Department of Health and Social Services documented 1.4 methamphetamine related deaths per 100,000 people, on average 10 Alaskans died from methamphetamine overdoses during that time-period.   Now, less than ten years later, those numbers of overdose deaths from methamphetamine have increased fourfold.   From 2014 to 2016, the death rate has climbed to 5.8 deaths per 100,000 people, on average 42 deaths during that time-period.   In addition, the rate of hospital care for those poisoned by amphetamines (including methamphetamine) increased by 40%.   According to the Center for Disease Control between 2005 and 2015, fatal overdoses due to stimulants has gone up over 300%, the vast majority of those

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS                                           7

Case 1:19-cr-00009-TMB-MMS   Document 45   Filed 06/24/21   Page 7 of 11

deaths are attributed to methamphetamine. These statistics track the Court's own observations about the increasing frequency of pure methamphetamine in the community.

This is actual evidence that as the purity of methamphetamine increased, the danger for its users has also increased.

Moreover, to highlight the overall seriousness of the drug problem for Alaskans, a September 6, 2018, a Juneau Empire article it cites that methamphetamine seizures in Alaska has increased four-fold in the last several years from 5,434 grams in 2016 to 24,909 in 2017. In Juneau, in one year, methamphetamine seizures have increased from 1,234 grams in 2016 to 3,903 in 2017, a two-fold increase. The court is correct, much of the drug is now sold in its pure form and the only explanation for the increased methamphetamine trafficking and seizures is the significant increase in addicts created because pure methamphetamine is much more addictive than cut methamphetamine. Unsuspecting children in the community are quickly becoming addicts when trying this drug in its pure form are becoming new consumers of the drug, thereby increasing demand and increased supply of drugs into the community. There is hard evidence and a clear and direct correlation to the number of deaths, which result from the increased drug use of the more potent and highly pure methamphetamine sold by drug traffickers to citizens in Alaska.

The incredible risk to the community based on the outlined circumstances of the offense require a lengthy prison sentence that adequately reflects the seriousness of this offense.

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS                             8

### D. The need to provide just punishment for the offense and to protect the public.

AYERS' crime placed a significant portion of the Juneau's population in significant danger. The community is sick and tired of being afraid of what drugs might be supplied to their children and loved ones. There has been a trail of wreckage caused by the use of methamphetamine and heroin in the community, and it effects everyone, not matter what social class a person comes from. As such, a sentence imposed by the court must be significant in order to provide a just punishment for the extreme danger this offense actually poses to the community and to protect the public from individuals like the defendant.

### E. To afford adequate deterrence to criminal conduct.

A lengthy sentence of imprisonment is needed to deter this defendant and others like him from engaging in this type of conduct in the future. There is specific deterrence to the defendant when they are incarcerated, however, like AYERS' past sentences of minimal jail time have not deterred him from other criminal conduct. The penalty needs to be significant enough to deter the defendant, but also others who may be similarly inclined to engage in this illegal behavior. This has been proven by a study by the U.S.S.G (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf) which found that higher sentences imposed on defendant had a direct correlation on the reduction of recidivism. The study revealed the higher the sentences imposed, the less likely that a defendant recidivated in the future. AYERS committed this offense mainly for financial motives.

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS  9

The defendant is an out of state resident who distributed drugs in Alaska for another "Gold Rush", not seeking minerals and other precious metals, but rather the peddling of poison to a local population for the sole financial benefit of the defendant. The defendant will be deterred by a longer prison sentence because his will be isolated in prison for his sentence. The sentence needs to be severe enough in order outweigh the cost benefit analysis of the spoils of drug trafficking and the penalty suffered for committing the offense and prevent future recidivism and in turn protect the public. It is likely that there will be general deterrence in this case, as well, which may give pause others those who might engage in such behavior. Thereby giving a person the chance to weight the potential personal cost over the financial reward they may receive from engaging in drug trafficking. As such, the government submits that the agreed upon below the low-end guideline sentence on 96 months is appropriate in this case.

**F.     To protect the public from further crimes of the defendant.**

The defendant needs a sentence that is sufficient to protect the public from future crimes of the defendant. It is unlikely that the defendant is likely to change his behavior in the future given his drug use and of ease of making money trafficking drugs. The fact that the defendant not a youthful offender is a reason to impose a significant for the defendant in this case. As stated earlier, the main reason the defendant engaged in this criminal behavior was mainly financial and the defendant drug/abuse use is only one aspect that may lead him astray in the future, but the lure of easy money is a thinking error that needs correction in this case.    If not addressed, then the defendant will

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS                            10

continue to be inclined to commit these types of offenses again and continue to pose a continuing danger to the public. Thus, the agreed upon sentence of 96 months is appropriate in this case.

## V. CONCLUSION

The government respectfully requests the court accept the parties binding agreement to impose a sentence of 96 months of incarceration and supervised release for five years as sufficient in this case, as it satisfies the sentencing factors delineated pursuant to 18 U.S.C. § 3553.

RESPECTFULLY SUBMITTED this 24th day of June, 2021 at Juneau, Alaska.

E. BRYAN WILSON
Acting United States Attorney

*s/ Jack S. Schmidt*
JACK S. SCHMIDT
Assistant United States Attorney

**CERTIFICATE OF SERVICE**
I hereby certify that on June 24, 2021 a true and correct
copy of the foregoing was served electronically on:

Julie Willoughby, Esq.

*s/ Jack S. Schmidt*
Office of the U.S. Attorney

U.S. vs. Ayers
1:19-cr-00009-TMB-MMS                    11